Martin RICHARDS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 10,2004.

Supreme Court of Delaware.

Submitted: Oct. 20, 2004.

Decided: Dec. 29, 2004.

Ronald G. Poliquin and Kevin M. Howard, Young, Malmberg & Howard, Dover, DE, for appellant.

Stacey L. Bonvetti, Department of Justice, Dover, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

HOLLAND, Justice:

This is an appeal from a final judgment that resulted in an adjudication of juvenile delinquency by the Family Court. The defendant, Martin Richards,[1] was convicted of Burglary in the Second Degree, Conspiracy Second, and Theft under $1000. The Family Court determined that Richards was delinquent based upon the State's theory of accomplice liability.[2]

### Issues on Appeal

Richards raises two issues on appeal. First, he asserts that the Family Court committed reversible error when the trial judge impermissibly commented on Richard's failure to testify. Second, Richards claims that there was insufficient evidence to find him guilty of the alleged charges.

Since neither of Richards' claims were presented to the Family Court, they are subject to the plain error standard of appellate review. We have concluded that both of the issues raised by Richards are without merit. Therefore, the judgments of the Family Court must be affirmed.

### Facts [3]

On or about July 3, 2003, the Miller family went away on vacation. When they departed, a house key for their residence was hidden under a fake rock in the backyard. Upon returning from their vacation on or about July 6, 2003, they found their home ransacked. Many items were stolen and missing including the hidden key to their home. Some of the items included video games, bottles of alcohol, old coins, and food products.

Mr. Miller immediately suspected some kids in the neighborhood and talked to their parents. At that point, some of their property was found in the neighbors' residences. Those defendants' parents came forward and brought their children to the police. The co-defendants were prosecuted in separate proceedings.

At trial, the co-defendants, Matthew Covington, Raymond Covington and David Burton gave conflicting testimony as to Matthew Richards' participation, if any, in the burglary. Matthew Covington, who was the first to testify, stated that the Miller's home was broken into twice that day. The first break-in occurred around dinnertime when his brother Raymond found the hidden key to the Miller's home. There was no testimony that Richards participated in the first burglary.

Matthew Covington stated that the second burglary occurred approximately 45

---

1. The names of the defendant, the victim and the witnesses have been assigned pseudonyms pursuant to Supreme Court Rule 7(d).

2. Del.Code Ann. tit. 11, § 271 (1974).

3. The material facts are not in dispute. This recitation of facts is taken almost verbatim from the Opening Brief filed on behalf of Richards.

minutes after the first. Matthew testified that they met Richards between the two burglaries when they saw him coming back from the basketball court. Matthew further testified that the boys walked into the Miller's home through the front door after his brother, Raymond Covington, entered through the back door and unlocked the front door. Although Matthew initially testified that Richards just stood by the door when they went to the Miller's home, during his redirect examination, Matthew contradicted his earlier testimony and stated that Richards was a direct participant in the burglary.

In contrast, Matthew's brother, Raymond Covington, testified that Richards never entered the home and never agreed to commit the burglary. Raymond also contradicted his brother as to how they entered the Miller's home the second time. He even stated that Matthew was lying.

The other co-defendant, David Burton, testified that Richards was not a participant in the burglary during the time he was involved. No other testimony was given other than that of the victim, Mr. Miller. Martin Richards chose to exercise his Fifth Amendment right to remain silent, and did not testify at trial. No stolen property was found on Richards nor were any of his fingerprints found at the Miller's home or property.

### Trial Judge's Comments Proper

In this appeal, Richards first claim is that the Family Court committed reversible error when it commented on his failure to testify. According to Richards, the trial judge violated the Fifth Amendment by impermissibly considering Richards' decision to remain silent as evidence of Richards' guilt. Since Richards did not present this contention to the Family Court,

that argument has been waived on appeal unless Richards can demonstrate plain error.[4]

After the State rested its case, Richards exercised his Fifth Amendment right not to testify. His attorney did not present any other evidence. The Family Court then heard closing arguments from both counsel. After a short recess, the trial judge announced her verdict, finding Richards delinquent as charged of all three offenses (Burglary in the Second Degree, Conspiracy in the Second Degree and Misdemeanor Theft less than $1,000). Richards' criminal responsibility for burglary and theft was premised upon his liability as an accomplice.[5]

The sentencing phase of the proceedings began immediately after the verdict was announced. Before sentence was imposed, however, Richards' attorney requested an opportunity for Richards' father to address the court. Richards' father advised the trial judge that he disagreed with the delinquency verdicts because he thought there were inconsistencies in the testimony offered by the three juvenile prosecution witnesses and because his son had told him he was not involved: "If my son is saying he didn't do it and the other three is saying he did, there is some type of doubt because if he's telling me the truth, and that's the way I raise my children, then I'm taking it 100 percent before the law and hope that something comes up out of this."

In response to those comments by Richards' father, the trial judge stated:

Mr. [Richards], I agree with you. It's very rare—let me explain how I agree with you. It's very rare that people come into my court and all testify to the

---

4. Supr. Ct. R. 8.

5. *See* Del.Code Ann. tit. 11, § 271 (1974).

same exact story. As a result, it's up to me to make the facts mesh together with who I believe is credible or not. Now while your son may have told you he did not commit the crime I didn't hear any testimony from your son. And that's a choice you all made but I did not hear his version of what happened.

He did not testify. So I can't consider—I'm not blaming him—I'm not accessing any type of level as to—but all I'm saying is I had three stories and the way I made them fit is I made them fit believing number one and two who testified. Number three said he wasn't there for the second trip.

So if he wasn't there—I'm saying the third guy who testified, he wasn't there so he doesn't know what happened on that second trip back to the house. So if I don't listen to him because he said he wasn't there, I'm left with the first two guys who testified who said your son was there.

When this explanation was concluded, the trial judge proceeded with Richards' sentencing. There was no defense objection to any of the post-verdict remarks of the trial judge and Richards' attorney did not move for a mistrial on the basis of those remarks.

In *Griffin v. California,* the United States Supreme Court held that the Fifth Amendment to the United States Constitution prohibits a prosecutor from commenting on a defendant's silence as evidence of guilt and prohibits a trial judge from instructing the jury that a negative inference may be drawn from the defendant's failure

to testify.[6] Richards argues that "The trial judge makes clear that she drew a negative inference from Mr. Richards's election not to testify. She considered the fact that she never actually heard from the defendant. Although not a typical *Griffin* violation, it is clear that part of the reasoning for finding guilt was the defendant's decision not to testify." According to Richards: "The trial judge directly referred to the Defendant's silence as affecting her decision. There is no doubt of prejudice to the Defendant since this was a rare case where the court explicitly articulates that part of its reasoning was that the Defendant was not heard from."

In *United States v. Robinson,* the United States Supreme Court explained that its holding in *Griffin* does not mean that any reference to an accused's silence is impermissible *per se.*[7] In *Robinson,* the Supreme Court held that, where the prosecutor's reference to the defendant's foregone opportunity to testify is a fair response to a claim made by the defense counsel that the defendant did not have the opportunity to explain himself, there is no violation of the Fifth Amendment.[8] In *Robinson,* the defendant was charged with mail fraud, and elected not to testify at trial.[9] During summation, his counsel repeatedly claimed that the Government had denied Robinson the opportunity to explain himself.[10] In rebuttal, the prosecutor stated, "He could have taken the stand and explained it to you."[11] In *Robinson,* the United States Supreme Court held that this was a fair response by the prosecutor

---

6. *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). *See also* *Jackson v. State,* 643 A.2d 1360 (Del.1994).

7. *United States v. Robinson,* 485 U.S. 25, 31–32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988).

8. *Id.*

9. *Id.* at 27, 108 S.Ct. 864.

10. *Id.*

11. *Id.* at 29, 108 S.Ct. 864.

in the *context* of the defendant's closing argument, and did not constitute error.[12]

*Robinson* established the principle that judicial review of Fifth Amendment *Griffin* claims based upon "prosecutorial comment must be examined in *context*."[13] This Court has previously applied *Griffin* and *Robinson* in reviewing challenges to a prosecutor's statements to a jury about a defendant's failure to testify.[14] We have held that, to constitute reversible error, the prosecutor's comment must be uninvited, must create an improper inference of guilt, and must be prejudicial.[15]

■ In this case, we hold that same "context" principle established in *Robinson* for judicial review of comments by prosecutors, also applies to comments about the defendant's silence that are made by a judge who conducts a bench trial. Although this Court has not previously reviewed challenges to comments made by a trial judge about a defendant's decision to remain silent, that issue has been addressed by appellate courts in both Georgia and Ohio.[16] As in Richards' case, both of those proceedings were also bench trials.[17] In each of those cases, the trial judge's comments on the defendant's si-

lence were made to emphasize that the State's evidence was uncontroverted.[18]

In *Corsini v. State,* when finding Corsini guilty, the trial judge mentioned that there may have been reasonable doubt as to Corsini's guilt had Corsini testified on her own behalf, but since she did not testify, the State's evidence was uncontradicted and the judge had no doubt as to guilt.[19] The Georgia Court of Appeals concluded that the trial judge had not improperly considered Corsini's failure to testify "in the context of explaining that there was no evidence contradicting the State's evidence."[20] In *City of Akron v. Thomas,* an Ohio Court of Appeals reviewed the trial judge's comment at the conclusion of the trial.[21] The judge noted that, although the defendant did not have to testify, none of the evidence against the defendant had been controverted or denied.[22] The Ohio Appellate Court found no error in the judge's comment because it was "nothing more than an acknowledgment that the evidence presented was uncontroverted."[23]

■ The context in which the trial judge made the comments challenged by Richards on appeal is important and dispositive. The trial judge had already announced her verdict. She was attempting

12. *United States v. Robinson,* 485 U.S. 25, 31–32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988).

13. *Id.* at 33, 108 S.Ct. 864, *citing Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (emphasis added).

14. *See, e.g., Robertson v. State,* 596 A.2d 1345, 1357 (Del.1991) (holding that the prosecutor's repeated comments that the defendant could have denied knowledge of the drugs or rebutted the trafficking charge by testifying, were so prejudicial as to constitute plain error).

15. *Miller v. State,* 750 A.2d 530 (Table) (Del. 2000); *Robertson v. State,* 596 A.2d at 1357.

16. *Corsini v. State,* 238 Ga.App. 383, 519 S.E.2d 39 (1999); and *City of Akron v. Thom-*

*as,* 2003 WL 22093217 (Ohio Ct.App. Sept. 10, 2003).

17. *Corsini v. State,* 519 S.E.2d at 40; *City of Akron v. Thomas,* 2003 WL 22093217, at *1.

18. *Corsini v. State,* 519 S.E.2d at 41; *City of Akron v. Thomas,* 2003 WL 22093217, at *3.

19. *Corsini v. State,* 519 S.E.2d at 41–42.

20. *Id.* at 41.

21. *City of Akron v. Thomas,* 2003 WL 22093217, at *3 (Ohio Ct.App. Sept. 10, 2003).

22. *Id.*

23. *Id.*

to respond to further argument about Richards' innocence that was being made by Richards' father prior to sentencing. The trial judge neither explicitly nor implicitly indicated that her verdict was based on any consideration of the impermissible factor of Richards exercising his Fifth Amendment right to remain silent at the trial. To the contrary, the trial judge explicitly stated that she did not blame Richards or make any negative assessment regarding Richards because of his decision not to testify.

The record reflects that, in responding to statements by Richards' father, the trial judge accurately observed that she had no basis to assess the credibility of Richards' out-of-court denial of participation in the crime to his father, because no such testimonial evidence by Richards was ever presented to her during the trial. When made in the context of responding to Richards' father, the trial judge's comments about Richards' decision to remain silent at trial were entirely proper.[24] Accordingly, we hold that the trial judge's comments did not infringe Richards' Fifth Amendment right to remain silent.

### Sufficient Evidence Presented

 Richards' second claim is that there was insufficient evidence presented at trial to support the guilty verdict. In order to challenge the sufficiency of the evidence for any of his three convictions on appeal, Richards is required to have fairly presented such a claim by a motion for judgment of acquittal to the trial court.[25]

Richards made no such motion in the Family Court.

 If an insufficiency of the evidence claim was not properly preserved under Delaware Family Court Criminal Rule 29, it may not be reviewed by this Court on appeal, except as plain error.[26] When reviewing the sufficiency of the evidence, this Court must determine " 'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "[27] Additionally, "[w]hen the determination of facts turns on a question of credibility and the acceptance or rejection of the testimony of witnesses appearing before him, those findings of the trial judge will be approved upon review, and we will not substitute our opinion for that of the trier of fact."[28]

 In this appeal, Richards argues that Matthew and Raymond Covingtons' testimony, as to when Richards entered the Miller's home, is in irreconcilable conflict. Even if the testimonies of the Covingtons are in conflict, however, a verdict will not be set aside merely because it is based upon conflicting evidence.[29] It was the Family Court judge's responsibility, as the trier of fact, to resolve issues of witness credibility and conflicting testimony, and to reconcile any conflicting testimony of the Covingtons, if possible. In discharging that function, it was permissible for the trial judge to accept the testimony

---

24. *United States v. Robinson,* 485 U.S. 25, 31–32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988).

25. *See Gordon v. State,* 604 A.2d 1367, 1368 (Del.1992); Supr. Ct. R. 8.

26. Supr. Ct. R. 8.

27. *Williams v. State,* 539 A.2d 164, 168 (Del. 1988) (quoting *Jackson v. Virginia,* 443 U.S.

307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); and *Skinner v. State,* 575 A.2d 1108, 1121 (Del.1990)).

28. *Wife (J.F.V.) v. Husband (O.W.V., Jr.),* 402 A.2d 1202, 1204 (Del.1979).

29. *Zutz v. State,* 160 A.2d 727, 729 (Del.1960).

of one of the Covingtons while rejecting conflicting testimony from the other Covington and from Burton.[30]

After reviewing the evidence in the light most favorable to the prosecution, we have determined that the State presented evidence of Richards' involvement with the Covingtons' burglary that establishes beyond a reasonable doubt each of the three elements of Delaware's Conspiracy in the Second Degree offense, as defined in Del. Code Ann. tit. 11, § 512(2). First, Richards intended to promote or facilitate the burglary of the Miller's residence because he knew that the Millers were not home and had been made aware of the Covingtons' plans to enter the Miller's home a second time. Richards was also present during the Covington's discussion about what they would steal once inside the Miller's home. Second, after having been informed of the previous burglary and the planned second burglary, Richards accompanied the Covingtons to the Miller's residence. Third, the Covingtons, with whom Richards conspired, perpetrated overt acts in furtherance of the burglary when they unlawfully entered the Miller's home a second time and stole various items. Richards' contention that the State's evidence was insufficient to establish his guilt of Conspiracy in the Second Degree beyond a reasonable doubt is without merit.

Because Richards conspired with the Covingtons to burglarize the Miller's home, he is liable as an accomplice for the Covingtons' criminal acts.[31] A person is subject to accomplice liability under Del. Code Ann. tit. 11, § 271(2) when the following elements are established:

A person is guilty of an offense committed by another person when: ...

(2) Intending to promote or facilitate the commission of the offense the person:

a. Solicits, requests, commands, importunes or otherwise attempts to cause the other person to commit it; or

b. Aids, counsels or agrees or attempts to aid the other person in planning or committing it ....

Richards was convicted under an accomplice liability theory of Burglary Second Degree and Theft Under $1000. The trial judge ruled that "[u]nder the accomplice liability of 11–271 it implicates him for the rest and I have to find him guilty of all three based on the fact that I believe he was part of the conspiracy and his co-conspirators committed the crime." The record developed by the State contains sufficient evidence for a rational trier of fact to conclude that Richards committed the crime of Conspiracy in the Second Degree and is subject to accomplice liability, as defined in Del.Code Ann. tit. 11 § 271(2) for both the Burglary and the Theft under $1000 perpetrated by the Covingtons.

### Conclusion

The judgments of the Family Court are affirmed.

30. *See Knight v. State*, 690 A.2d 929, 932 (Del.1996) (trier of fact sole judge of witness credibility); *Quarles v. State*, 696 A.2d 1334, 1340 (Del.1997); *Robertson v. State*, 630 A.2d 1084, 1095 (Del.1993); *Pryor v. State*, 453 A.2d 98, 100 (Del.1982); *Tyre v. State*, 412 A.2d 326, 330 (Del.1980).

31. Del.Code Ann. tit. 11, § 271(2) (1974).