**Matthew HARRIS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 347, 2008.

Supreme Court of Delaware.

Submitted: Jan. 21, 2009.

Decided: March 10, 2009.

Joanna M. Litt, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

Danielle J. Brennan, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice.

The defendant-appellant, Matthew Harris,[1] appeals from the final judgments of the Family Court adjudging him delinquent of Conspiracy in the Second Degree[2] and Attempted Robbery in the First Degree.[3] Harris raises two arguments on appeal. First, he contends that there was insufficient evidence to prove beyond a reasonable doubt that he committed the crime of Conspiracy in the Second Degree. Second, he contends that because the trial judge was unable to find beyond a reasonable doubt that Harris struck the victim, the trial judge erred in finding that each and every element of Attempted Robbery in the First Degree was proven beyond a reasonable doubt.[4] We have determined that both of the arguments made by Harris are without merit. Therefore, the judgments of the Family Court must be affirmed.

### Facts and Procedural History

On October 12, 2007, fourteen-year-old Harris went to the A & B Market at Van

---

1. Pseudonyms were assigned on appeal pursuant to Del.Supr. Ct. R. 7(d).

2. Del.Code Ann. tit. 11, § 512.

3. Del.Code Ann. tit. 11, § 531; Del.Code Ann. tit. 11, § 832.

4. *See* Del.Code Ann. tit. 11, § 301(b).

Buren and Linden streets in the City of Wilmington with two other juveniles: T.A. and a boy known only by his first name, M. Harris and M. were wearing roller skates and T.A. was riding his bike. While Harris and T.A. went inside the store, M. waited outside.

The victim, James Adams, also was at the A & B Market at that time. Before he entered the store, Adams noticed the three juveniles outside. While inside the store, Adams noticed Harris and T.A. had also entered.

Harris did not purchase anything and was asked to leave because he was wearing roller skates. Before he left, Harris looked directly into the security camera located inside the store. T.A. did not look at the security camera when he left the store.

When Adams left the store, Harris and the two other juveniles followed him. As Adams walked down the street, he first heard what sounded like a skateboard or roller skates, then silence. Adams was then struck from behind with what he described to be a skateboard. When Adams fell to the ground, he was punched and kicked in the eye by someone wearing roller skates.

Adams identified Harris as his assailant and testified that Harris said, "Give me your money and your gold you white, mother fucking faggot." Adams testified that he yelled for help and two unidentified delivery men nearby yelled for someone to call 911, but did not come over to help Adams. Adams also testified that, when the juveniles heard the delivery men yell for someone to call 911, they fled.

Harris testified in his own defense. According to Harris, he took off his skates before entering the store and, as he was putting his skates back on after leaving the store, M. said he was going to "go get some money so we can go to the mall." Harris testified that he believed M. to mean he was going to his sister's house, which was nearby, because they had gotten money from his sister in the past. The juveniles then proceeded in the direction of M.'s sister's house. Harris testified that he was skating in the street while M. was skating down the sidewalk, with T.A. slowly riding his bike on the sidewalk behind M.

Both Harris and T.A. testified that, out of nowhere, M. attacked Adams.[5] According to Harris, M. suddenly skated behind Adams and hit him with his elbow. Adams then fell to the ground. At that point, Harris said that he skated closer to the sidewalk to see what was going on. M. backed off and Adams got up and ran toward Harris, as he was standing in the street near the curb. Harris testified that because M. backed away, it appeared to Adams that Harris was his attacker. Harris testified that Adams grabbed him by the chain around his neck. At that point, a delivery man approached and pulled Adams away from Harris. When the delivery man said he was going to call the police, the juveniles fled.

Harris was arrested two days later on October 14, 2007. He was initially charged with one count each of Attempted Robbery

---

5. T.A. testified that he met Harris and M. at the A & B Market by happenstance and was following M. only because they happened to be going in the same direction, but he claims that he never made plans to meet Harris and M. at the store or continue with them after meeting at the store. The trial judge found that T.A.'s testimony was not credible: "I don't think [T.A.]'s testimony is, in fact, credible that he just happen[ed] to be there, he was going to another friend's, just happen[ed] to be going down the street with you guys. I don't think that's credible ... I think the three of you met there. That [M.] said he was going to get money. That you understood that was part of his plan."

in the Second Degree and Conspiracy in the Second Degree. On November 16, 2007, the State amended the charges to one count each of Attempted Robbery in the First Degree, Conspiracy in the Second Degree and Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF"). Harris's trial took place on March 24, 2008, and May 6, 2008.

### Family Court Decision

The trial judge found that the three juveniles met at the A & B Market and each understood that when M. said he was "going to get money" he meant he was going to take it from Adams. The trial judge further found that, although Adams could not identify which person struck him and did not know whether he was hit with a skateboard or an elbow, the State had proven that one of the three juveniles had struck Adams in the head. Therefore, the trial judge concluded that, even if Harris was not the one who hit Adams in the head, he acted with the same state of mind as the person who did, as indicated by his act of moving closer to the victim after Adams was knocked to the ground.

The trial judge found Harris not delinquent of PDWDCF, but delinquent of both Conspiracy in the Second Degree and Attempted Robbery in the First Degree. Harris was sentenced on June 17, 2008, to an indefinite commitment at Level V, suspended for a six-month commitment to Snowden Cottage.

### Standard of Review

■ In order to challenge the sufficiency of the evidence, an appellant is required to have fairly presented such a claim by a motion for judgment of acquittal to the trial court.[6] Harris did not present such a motion to the Family Court challenging the sufficiency of the evidence on either the charge of Attempted Robbery in the First Degree or Conspiracy in the Second Degree. Therefore, those claims are waived and may now be reviewed on appeal only for plain error.[7]

■ An error is plain where it is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the judicial process."[8] We review challenges to the sufficiency of the evidence supporting a defendant's conviction to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[9] In addition, "[w]hen the determination of facts turns on a question of credibility and the acceptance or rejection of the testimony of witnesses appearing before him, those findings of the trial judge will be approved upon review, and we will not substitute our opinion for that of the trier of fact."[10]

### Conspiracy Evidence Sufficient

■ Harris contends that there was insufficient evidence to support his delin-

---

6. *See Richards v. State,* 865 A.2d 1274, 1280 (Del.2004); *Gordon v. State,* 604 A.2d 1367, 1368 (Del.1992); Del.Supr. Ct. R. 8; Del. Fam. Ct.Crim. Proc. R. 29.

7. *Id.* (citing Del.Supr. Ct. R. 8); *Liket v. State,* 719 A.2d 935, 939 (Del.1998).

8. *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986), *cert. denied,* 479 U.S. 869, 107 S.Ct. 236, 93 L.Ed.2d 161 (1986); *Dutton v. State,* 452 A.2d 127, 146 (Del.1982).

9. *Richards v. State,* 865 A.2d at 1280 (quoting *Williams v. State,* 539 A.2d 164, 168 (Del. 1988)); *see also Carter v. State,* 933 A.2d 774, 777 (Del.2007).

10. *Richards v. State,* 865 A.2d at 1280 (quoting *Wife (J.F. V.) v. Husband (O.W.V., Jr.),* 402 A.2d 1202, 1204 (Del.1979)).

quency adjudication for Conspiracy in the Second Degree because the fact that he moved closer to see what was happening does not establish beyond a reasonable doubt that he assisted in carrying out a common scheme. First, Harris argues that in order to amount to assistance, "[t]here just needs to be something more concrete." Second, Harris argues that his actions were inconsistent with those of a lookout, who "would be scanning the street, looking for other people, attempting to warn the co-conspirators if they were about to be caught." Rather than "looking out," Harris argues that he was "looking at" an unfortunate event unfolding before his eyes.

■ In order to adjudge a juvenile delinquent for Conspiracy in the Second Degree, the State is required to prove beyond a reasonable doubt that "when, intending to promote or facilitate the commission of a felony, the [juvenile] ... [a]grees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit that felony." [11] The State must also prove that one of the co-conspirators committed an overt act in furtherance of the conspiracy. [12] It is not necessary that there be a formal agreement in advance of the crime. "If a person understands the unlawful nature of the acts taking place, and nevertheless assists in any manner in the carrying out of the common scheme, [that person] becomes a conspirator to commit the offense." [13]

For Harris to have been found delinquent of Conspiracy in the Second Degree, the State was required to prove beyond a reasonable doubt that, when intending to promote or facilitate the commission of the felony of Attempted Robbery in the First Degree, Harris agreed with an unknown person or people that one or more of them would engage in conduct constituting the Robbery in the First Degree, or an attempt thereof, and that one of the co-conspirators committed an overt act in pursuance of the conspiracy. [14] Harris testified that M. was the attacker, not Harris, and that as M. attacked the victim, Harris was merely moving closer to see what was going on. The Family Court judge found that it was not believable or credible that Harris was simply following M. and held that Harris was, at the very least, acting as a lookout:

I am very clear that your testimony that you just moved closer and that you were following [M.] ... and you had nothing else to do with it is not believable. It's just not credible. I think what happened, more along the lines, is whether or not it was spoken, but it was understood, "I'm going to get some money," means I see this man walk out of the store then I have to follow him. Just as you said, very clear on how you said this: "I was in the middle of the street, but I was close ... And I'm watching and I see him fall and then I move close to see what's happening to finish watching." That's not finishing. That's part of robbery. That's just like being a lookout. And when you act like that, you're part of the crime.

In considering all of Harris' actions in conjunction with those of the other two juveniles, the trial judge concluded that a conspiracy existed among the three juve-

11. Del.Code Ann. tit. 11, § 512(1).

12. *Weick v. State*, 420 A.2d 159, 164 (Del. 1980); *see also* Del.Code Ann. tit. 11, § 512(2).

13. *Bender v. State*, 253 A.2d 686, 687 (Del. 1969).

14. Del.Code Ann. tit. 11, § 512.

niles to rob the victim, Adams. The trial judge found that Harris and M. were both looking for money and that they, along with T.A., waited outside the A & B Market until Adams left. The trio then followed Adams, and upon seeing M. attack the victim, Harris moved closer to the scene, to a point where Harris was the nearest person to Adams when Adams stood up. The facts in the record are sufficient to support the trial judge's conclusion that Harris understood the unlawful nature of the acts taking place and assisted in carrying out the common scheme, even if only as a lookout.[15] Therefore, we hold that there was sufficient evidence to support the trial judge's finding Harris delinquent for committing the crime of Conspiracy in the Second Degree.

### Attempted Robbery in the First Degree

 Harris next contends that because the trial judge was unable to find beyond a reasonable doubt that Harris struck the victim, the trial judge erred in finding that each and every element of Attempted Robbery in the First Degree was proven beyond a reasonable doubt. In order for the Family Court to adjudge a juvenile delinquent for Robbery in the First Degree, the State must prove beyond a reasonable doubt that "in the course of committing theft, the [juvenile] uses or threatens the immediate use of force upon another person with intent to . . . [c]ompel the owner of the property or another person to deliver up the property"[16] *and* "in the course of the commission of the crime or immediate flight therefrom, the [juve-

nile] or another participant in the crime . . . [c]auses physical injury to any person who is not a participant in the crime."[17] Pursuant to title 11, section 531 of the Delaware Code, "[a] person is guilty of an attempt to commit a crime if the person . . . [i]ntentionally does or omits to do anything which, under the circumstances as the person believes them to be, is a substantial step in a course of conduct planned to culminate in the commission of the crime by the person."[18] A juvenile may be adjudged delinquent either as an accomplice or as a principal in the criminal acts.[19]

The trial judge found that the State proved beyond a reasonable doubt that three juveniles had conspired to commit robbery. After assessing the credibility of the witnesses and resolving inconsistent testimony, he noted, "I think the three of you met there. That [M.] said he was going to get money. That you understood that was part of his plan." The trial judge also found that the State proved beyond a reasonable doubt that force was used in the course of committing the attempted robbery. Although the trial judge noted that he could not find beyond a reasonable doubt that Harris was the one who struck Adams, the trial judge found the State had proven that Adams was hit on the head by one of the three juveniles as he left the store. This finding is supported by Harris's own testimony that M. "hit [Adams] like with his elbow and then come with his left hand to him and the man had fell. Then [M.] kicked him with the skates on."

15. *See, e.g., Seward v. State,* 723 A.2d 365, 368 (Del.1999).

16. Del.Code Ann. tit. 11, § 831(a)(2). *See also* Del.Code Ann. tit. 11, § 841 (stating that "[a] person is guilty of theft when the person takes, exercises control over or obtains property of another person intending to deprive that person of it").

17. Del.Code Ann. tit. 11, § 832(a)(1).

18. Del.Code Ann. tit. 11, § 531(2).

19. Del.Code Ann. tit. 11, § 271.

T.A. also testified that M. pushed and punched Adams before he fell to the ground.

Finally, the trial judge found the additional circumstance that the victim was injured during the commission of the crime. Adams testified that as a result of getting kicked in the face he had to have laser surgery on his left eye.[20] Given the finding of a conspiracy among the juveniles and the actions taken, the record reflects that there was sufficient evidence to adjudicate Harris guilty of Attempted Robbery in the First Degree.[21]

### Conclusion

The judgments of the Family Court are affirmed.

---

**20.** *See McKnight v. State*, 753 A.2d 436, 437–38 (Del.2000).

**21.** *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Williams v. State*, 539 A.2d 164, 168 (Del. 1988).