IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILLIAM T. WINDSOR, III, | § | |
| | § | |
| Defendant-Below, | § | No. 10, 2014 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below: Superior Court |
| | § | of the State of Delaware, |
| STATE OF DELAWARE, | § | in and for Sussex County |
| | § | Cr. ID 1212009736 |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: June 27, 2014
Decided: August 28, 2014

Before **STRINE**, Chief Justice, **HOLLAND**, and **RIDGELY**, Justices.

# **O R D E R**

This 28th day of August 2014, upon consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record below, it appears to the Court that:

(1)  On February 18, 2013, a grand jury indicted William T. Windsor, III, on three counts of rape in the second degree, two counts of continuous sexual abuse of a child, ten counts of sexual abuse of a child by a person in a position of trust in the first degree, three counts of rape in the fourth degree, ten counts of sexual solicitation of a child, eighty-seven counts of sexual abuse of a child by a person of trust in the second degree, forty-three counts of unlawful sexual contact in the second degree, and two

counts of endangering the welfare of a child. The victims ("Victim 1" and "Victim 2") were daughters of Windsor's girlfriend.

(2)  Windsor moved for a bill of particulars, to sever the charges related to the two victims, and to suppress his inculpatory statement to the police. The Superior Court granted the motion to sever. The parties agreed that the State would not use Windsor's statement after the one hour and twenty-five minute mark of the police interview at trial and the Superior Court denied the motion to suppress.

(3)  At an office conference on September 5, 2013, the Superior Court directed the State to consider reducing the number of charges it presented at trial.[1]  The State then requested that the Superior Court reconsider severance if the number of charges was reduced and the Superior Court indicated that it would do so.[2]

(4)  On September 9, 2013, the morning of jury selection, the State offered an amended indictment reducing the number of charges involving Victim 1 from 151 counts to twelve counts and indicated it had a draft amended indictment reducing the number of charges against Victim 2 from

---

[1] Appendix to Appellant's Non-Merit Brief at A52-54.

[2] *Id.* at A59.

2

nine counts to eight counts.[3]  The State also sought to rejoin the charges involving both victims so there could be one trial instead of two.[4]  The State indicated it would not oppose a continuance if Windsor was not prepared to proceed to trial that day on the charges against both victims.[5]  The Superior Court denied the request for rejoinder of the charges and held that trial would proceed the next day, as originally scheduled, on the twelve counts involving Victim 1.[6]

(5)    Later that same day, Windsor pled guilty to one count of rape in the second degree in the case involving Victim 1 and *nolo contendere* to continuous sexual abuse of a child in the case involving Victim 2.  Before accepting his plea, the Superior Court conducted a lengthy colloquy with Windsor.  During the colloquy, Windsor stated under oath that: (i) he had freely and voluntarily decided to plead guilty to rape in the second degree and *nolo contendere* to continuous sexual abuse of a child; (ii) he had not been promised anything that was not stated in the written plea agreement; (iii) nobody had forced or threatened him to enter the plea; (iv) he

---

[3] *Id.* at A65.

[4] *Id.* at A65-66.

[5] *Id.* at A69.

[6] *Id.* at A75.

understood that by entering the plea there would not be a trial and that he would be waiving several constitutional rights, including the right to be presumed innocent until the charges were proven beyond a reasonable doubt and the right to hear and question witnesses; and (v) he understood that he could receive a total maximum penalty of fifty years of incarceration.[7] After pleading guilty, Windsor sent two letters to the Superior Court inquiring about the substance of the September 5, 2013 office conference.

(6) The sentencing hearing took place on December 13, 2013. After the Superior Court heard statements from Windsor's counsel and relatives, Windsor asked the Superior Court if he could make a Superior Court Criminal Rule 32(d) ("Rule 32(d)") motion.[8] Under Rule 32(d), the court may permit withdrawal of a guilty plea or plea of *nolo contendere* upon a showing by the defendant of any fair and just reason, if the defendant moves to withdraw his plea before imposition of the sentence. Windsor's counsel did not file a Rule 32(d) motion before the hearing and indicated that he did not know Windsor was going to make such a request at the hearing.[9] The Superior Court informed Windsor:

---

[7] *Id.* at A115-26.

[8] *Id.* at A139.

[9] *Id.* at A140, 150.

You know, if you wanted to do such a thing, one minute before the sentencing is not the time to do it. It is required by the Court that there are motions to be filed. The lawyer makes the motion. It is in writing, so something of that nature would have to fill that requirement, and that has not happened.

And the second thing is that under the law there is–on this record, on this presentence report, on this plea of guilty, the evidence of guilt with respect to [Victim 1] is overwhelming. I understand that you pled *nolo contendere* with respect to the charge as to [Victim 2]. I have reviewed the record and that is overwhelming as well. You admitted your guilt as to [Victim 1] with the detective, and there is absolutely–as far as I am concerned, what you are attempting to do is a dilatory tactic. It is completely out of bounds, and I am not going to hear it.[10]

(7) After hearing statements from the State and the victims, the Superior Court found there were aggravating factors, including vulnerability of the victims and lack of remorse. The Superior Court sentenced Windsor as follows: (i) on rape in the second degree, to twenty-five years of Level V imprisonment, suspended after twenty years for decreasing levels of supervision; (ii) on continuous sexual abuse of a child, to twenty-five years of Level V supervision, suspended after two years for decreasing levels of supervision. This is Windsor's direct appeal.

(8) On appeal, Windsor's appellate counsel ("Counsel") filed a brief and a motion to withdraw under Supreme Court Rule 26(c) ("Rule 26(c)"). Counsel asserts that, based upon a complete and careful

---

[10] *Id.* at A140-41.

5

examination of the record, there are no arguably appealable issues. By letter, Counsel informed Windsor of the provisions of Rule 26(c) and provided Windsor with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Windsor of his right to identify any points he wished this Court to consider on appeal. Windsor has raised several issues for this Court's consideration. The State has responded to the issues raised by Windsor and moved to affirm the Superior Court's judgment.

(9) When reviewing a motion to withdraw and an accompanying brief, this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[11]

(10) The issues Windsor raises on appeal may be fairly summarized as follows: (i) the Superior Court erred in refusing to let him present the grounds for a Rule 32(d) motion to withdraw his guilty plea; (ii) the sentence was outside statutory guidelines, resulted from judicial bias and prejudice,

---

[11] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927-28 (Del. 1996).

exceeded the parties' "outside oral agreement,"[12] and constituted cruel and unusual punishment under the Eighth Amendment; (iii) his Sixth Amendment right to confrontation was violated and he was deprived of due process by the Superior Court limiting the length of his trial to three days; and (iv) there was prosecutorial misconduct. We address these in turn.

(11) First, the Superior Court did not err by refusing Windsor's tardy *pro se* request to bring a motion to withdraw his guilty plea. Rule 47 of the Superior Court Criminal Rules states that the Superior Court "will not consider pro se applications by defendants who are represented by counsel unless the defendant has been granted permission to participate with counsel in the defense."[13] At the time of the sentencing hearing, Windsor was represented by counsel and had not been granted permission to participate with his counsel in his defense. Only Windsor's counsel could act on Windsor's behalf in the Superior Court.[14] Windsor's counsel did not file a Rule 32(d) motion before the sentencing hearing and indicated at the hearing that he did not know Windsor was going to seek to withdraw his guilty plea.

---

[12] Opening Brief, Exhibit A at 6.

[13] Super. Ct. Crim. R. 47. *See also In re Haskins*, 551 A.2d 65, 66 (Del. 1988) (stating Superior Court had no duty to consider *pro se* motions filed by criminal defendant represented by counsel).

[14] *Haskins*, 551 A.2d at 67.

7

Absent the endorsement of his counsel, Windsor's attempt to withdraw his guilty plea under Rule 32(d) was a legal nullity.[15] Thus, the Superior Court was not required to consider Windsor's last minute attempt to make a *pro se* Rule 32(d) motion. That the Superior Court acted within its discretion is also reinforced by the extensive colloquy that the Superior Court had with Windsor before accepting his guilty plea. Although Windsor may have sought to withdraw his guilty plea based on a supposed promise that he would receive a twelve year sentence, the written plea agreement and plea colloquy were clear and to the contrary. The plea agreement, signed by Windsor, expressly stated that the maximum penalty for the offenses was fifty years incarceration.[16] During the plea colloquy, Windsor stated that he understood each offense was punishable by two to twenty-five years of incarceration and that the maximum penalty he could receive was up to fifty years of incarceration, of which twelve years was a minimum-mandatory sentence.[17]

---

[15] *Chavous v. State*, 953 A.2d 282, 286 (Del. 2008) (prosecutor's belief that defendant had breached plea agreement by bringing *pro se* motion to withdraw guilty plea was premature because motion was legal nullity until it was endorsed by defendant's counsel).

[16] Superior Court Docket Entry 32.

[17] Appendix to Appellant's Non-Merit Brief at A119-20.

8

(12)   Second, Windsor's challenges to his sentence are also without merit.  "[A]ppellate review of sentences is extremely limited" in Delaware.[18] Appellate review "generally ends upon determination that the sentence is within the statutory limits prescribed by the legislature."[19]   Windsor's sentence is within the statutory limits.  Rape in the second degree and continuous sexual abuse of a child are both Class B felonies, so the Superior Court could impose sentences of up to twenty-five years incarceration for each crime.[20]  To the extent Windsor claims his sentence violated sentencing guidelines, it is settled that the Delaware Sentencing Accountability Commission Guidelines are voluntary and non-binding.[21]  A defendant has no legal or constitutional right to appeal a statutorily authorized sentence simply because it does not conform to guidelines established by the Sentencing Accountability Commission.[22]   The Superior Court found aggravating factors, including the vulnerability of the victims and Windsor's lack of remorse, weighed in favor of a greater sentence.

---

[18] *Mayes v. State*, 604 A.2d 839, 842 (Del. 1992).

[19] *Ward v. State*, 567 A.2d 1296, 1297 (Del. 1989).

[20] 11 *Del. C.* §§ 772, 776, 4205(b)(2).

[21] *Mayes*, 604 A.2d at 845.

[22] *Id.*

(13) As far as Windsor's claim that the Superior Court demonstrated bias and prejudice by referring to his physical size compared to the victims and his use of economic pressure on the victims and their mother, Windsor does not contend that either of those statements was false or based on false information. And each was a case-specific factor that rationally bore on the sentence Windsor should receive. The Superior Court imposed the sentence after receiving the presentence investigation as well as materials submitted by Windsor's relatives, reviewing the record, and hearing statements from Windsor's counsel, Windsor's family members, Windsor, the State, and the victims. The record reflects that the sentence was based on the nature of Windsor's crimes and does not support Windsor's claims of bias and prejudice.

(14) Likewise, Windsor's contention that the sentence exceeded an "outside oral agreement" with the State for a twelve year sentence is contradicted by the plea agreement and the plea colloquy. The plea agreement, signed by Windsor, expressly stated that the offenses were subject to a maximum consecutive incarceration of fifty years and that Windsor was not promised a particular sentence.[23] During the plea colloquy, Windsor stated that he had not been promised anything that was not

_____

[23] Superior Court Docket Entry 32.

reflected in the plea agreement and that he understood each offense was punishable by two to twenty-five years of incarceration.[24] The sentence imposed was within statutory limits and Windsor has not offered any evidence suggesting that his sentence was grossly disproportionate to his crimes.[25] Thus, his conclusory Eighth Amendment claim, like his other challenges to his sentence, is without merit.

(15) Third, Windsor's claims that he was denied his right to confront witnesses under the Sixth Amendment and that a three day trial would deprive him of due process were not raised in the proceedings below. Therefore, those claims are waived absent plain error.[26] An error is plain when it is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[27] There is no plain error here. Windsor does not explain how his right to confront witnesses was violated and there is no indication in the record that he was deprived of this right. If Windsor had proceeded to trial, his counsel would have had the opportunity

---

[24] Appendix to Appellant's Non-Merit Brief at A115, A119.

[25] *Ducote v. State*, 2005 WL 1200859, at *3 (Del. May 18, 2005) (rejecting Eighth Amendment claim of defendant who did not present any evidence suggesting life term was grossly disproportionate to crime of attempted murder in first degree and who had to be sentenced to life imprisonment under habitual offender statute).

[26] Supr. Ct. R. 8; *Harris v. State*, 968 A.2d 32, 35 (Del. 2009).

[27] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

to cross-examine the State's witnesses. Windsor also fails to explain why a three day trial was too short for his counsel to call witnesses or present evidence and does not offer any evidence suggesting he could not have presented an effective defense within the time allotted. Accordingly, both of these claims are without merit.

(16) Fourth, Windsor seems to claim that the prosecution engaged in misconduct by improperly consolidating the indictment to bring the cases involving Victim 1 and Victim 2 together, bringing multiple and duplicative charges, and coercing him into pleading guilty by seeking to rejoin the cases against Victim 1 and Victim 2. Windsor also complains that he was never shown the discovery or other materials. Windsor did not object to the alleged prosecutorial misconduct below, so we also review these claims for plain error.[28]

(17) Windsor cites no legal authority in support of the proposition that an indictment can only charges offenses relating to one victim. "Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged are of the same or similar character…."[29] The record also does not support Windsor's claim

---

[28] Supr. Ct. R. 8; *Harris v. State*, 968 A.2d at 35.

[29] Super. Ct. Crim. R. 8(a).

that he was deprived of notice and the opportunity to challenge the "consolidated" charges. In any event, the Superior Court granted Windsor's motion to sever the Victim 1 charges from the Victim 2 charges. The State moved to rejoin the Victim 1 and Victim 2 charges after reducing the number of charges against both victims as directed by the Superior Court, but the Superior Court denied that motion. Thus, it is plain that Windsor had notice and opportunity to challenge the "consolidation" of charges involving Victim 1 and Victim 2.

(18) Windsor makes a conclusory claim that the State engaged in misconduct by bringing multiple, duplicative charges against him, but fails to identify the counts of the indictment that he contends are based on the same offense. A person who commits multiple sexual assaults on the same victim may be convicted and punished for each separate act.[30] Windsor was originally charged with 151 counts involving Victim 1 and nine counts involving Victim 2, but those counts were later reduced to twelve counts involving Victim 1 based on multiple sexual acts occurring over a four year period and eight counts involving Victim 2 based on multiple sexual acts occurring over a two year period. Windsor has not shown that the charges in the indictment were unlawfully duplicative.

---

[30] *Feddiman v. State*, 558 A.2d 278, 288 (Del. 1989).

(19) Windsor also repackages his claim by arguing that the rejoinder coerced him into pleading guilty. This claim is entirely without merit. Windsor stated under oath at his plea colloquy that no one had threatened or forced him to plead guilty and that he freely and voluntarily pled guilty to rape second degree and *nolo contendere* to continuous sexual abuse of a child.[31] Absent clear and convincing evidence to the contrary, Windsor is bound by these statements.[32] A claim of coercion in the plea bargaining process can only be substantiated if the State threatens to take action or takes action that is not legally authorized.[33] Windsor fails to explain why it was improper at all, much less coercive, for the State to move to rejoin the Victim 1 and Victim 2 cases after *reducing* the number of charges involving each of the victims as urged by the Superior Court. In any event, the Superior Court denied the State's motion to rejoin. Windsor was left to proceed to trial on twelve charges involving one victim, not a trial involving both victims with little notice as he appears to suggest.

(20) Windsor also claims that he accepted the plea bargain because he was not informed that the number of charges had been reduced and that

---

[31] Appendix to Appellant's Non-Merit Brief at A115-16.

[32] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).

[33] *Albury v. State*, 551 A.2d 53, 61 (Del. 1988).

the State's motion to rejoin the charges involving both victims was denied. To the extent Windsor is attempting to bring an ineffective assistance of counsel claim because his counsel was responsible for informing him of important developments in the litigation,[34] this Court does not consider ineffective assistance of counsel claims raised for the first time on direct appeal.[35] Given the extensive colloquy undertaken before Windsor's guilty plea, we are dubious about his contention that he would not have pled guilty and no contest to crimes against two victims solely because he would have otherwise faced separate trials as to each set of charges. Nothing in the record suggests the State was not going to pursue Windsor for convictions as to crimes against both victims even if it took two trials. In any event, for present purposes, Windsor may not press a *Strickland* claim. Relatedly, although Windsor claims there was prosecutorial misconduct because he was not shown discovery, an unspecified DVD, or the victim statements, he does not claim that his counsel lacked access to those materials. In fact, the record reflects that Windsor's counsel requested discovery, viewed Windsor's confession, and reviewed the victim's statements. The

---

[34] *Cooke v. State*, 977 A.2d 803, 841 (Del. 2009) (recognizing defense counsel's duties include keeping defendant informed of important developments); Principles of Professionalism for Delaware Lawyers Rule 1.4(a)(3) (stating lawyer shall keep client reasonably informed about status of matter).

[35] *Wright v. State*, 513 A.2d 1310, 1315 (Del. 1986).

15

prosecution was not responsible for ensuring that Windsor personally viewed materials made available to his counsel. Windsor's claim of prosecutorial misconduct based on his non-viewing of these materials is therefore without merit. Again, we are dubious that anything in these allegations bears a rational connection to Windsor's decision to plead guilty, but to the extent he is attempting to raise a *Strickland* claim based on what his counsel did with the materials provided by the State, he cannot do so now on direct appeal.

(21) This Court has reviewed the record carefully and has concluded that Windsor's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Windsor's counsel has made a conscientious effort to examine the record and the law and has properly determined that Windsor could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice