IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TREVOR BELMONT, | § | |
| | § | No. 292, 2017 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| STATE OF DELAWARE, | § | File No. 1604016105 |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: February 21, 2018
Decided: March 7, 2018

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## ORDER

This 7th day of March, 2018, having considered the briefs and the record below, it appears to the Court that:

(1)    Trevor Belmont appeals from a Family Court adjudication of delinquency for aggravated menacing. He claims there was insufficient evidence introduced at trial that he intended to place another person in fear of imminent physical injury, which was necessary to sustain his conviction. After a careful review of the record, we find that the Family Court judge, who acted as the trier of fact, had sufficient evidence in the record to find beyond a reasonable doubt that

Belmont intended to cause fear in the police officer when Belmont raised a gun in his direction. Thus, we affirm the Family Court's decision.

(2) On April 21, 2016, the Wilmington Police Department alerted its officers to the report of a young man with a gun near the Delaware Technical Community College campus. Officers Hector Tabron and Darriel Tynes responded and found Belmont, a seventeen-year-old who matched the suspect's description, holding his waistband and running toward them. Tabron told Belmont to stop, but Belmont turned and ran down the sidewalk of an adjoining street. The officers pursued Belmont on foot. Tabron followed directly behind Belmont on the sidewalk, while Tynes ran parallel down the street. Tynes heard Belmont fall as Belmont tried to jump from the sidewalk to the street over the edge of a car. Tynes testified that he saw Belmont stand up, reach for his waistband, pull out a gun, and begin to raise it toward Tynes. Belmont, however, testified that he did not see the officer behind him and pulled out the gun to toss it into a pile of leaves without ever raising it toward the officers. Witnesses heard an officer command Belmont to "drop the gun,"[1] or "drop the weapon,"[2] roughly one-to-two seconds before Tynes fired a single shot that hit Belmont in the knee.[3] Tabron testified that he never saw the gun,

---

[1] App. to Opening Br. at 141 (Trial Tr., *State v. [Belmont]*, No. 1604016105, at 133 (Del. Fam. Feb. 27, 2017)).

[2] *Id*. at 175 (Tr., at 167).

[3] *Id*. at 117 (Tr., at 109).

and Belmont did not have the gun when the officers arrested him. The police later found a BB gun in the pile of leaves, which Belmont admitted was his.

(3) On February 17, 2017, the State charged Belmont in Family Court with aggravated menacing and resisting arrest. At the bench trial, Tynes testified that Belmont "yanked [the gun] from his waistband and he was making forward movement . . . like he was going to pull it out in my direction,"[4] and that Belmont was "making movements towards me like he was raising it toward me."[5] Tynes also testified, "I felt my life was in danger," and that he did not know if Belmont was going to point the gun at him or Tabron.[6] Belmont admitted to carrying the BB gun in his pocket, but denied pointing the gun at an officer or trying to scare anyone. Belmont also claimed that while Tabron shouted for him to stop, Tynes did not say anything before he fired.

(4) When the State rested its case, Belmont moved for judgment of acquittal because there was insufficient evidence of anyone being placed in fear. The court denied the motion and found Belmont delinquent on both charges.[7] On

---

[4] *Id*. at 127 (Tr., at 119).
[5] *Id*. at 94 (Tr., at 86).
[6] *Id*.
[7] *Id*. at 191–93 (Tr., at 183–85); *id*. at 239 (Tr., at 231) ("With respect to the charge of aggravated menacing, the state is required to prove the charge beyond a reasonable doubt. Not present a perfect case, but when I take the culmination of testimony from every single witness, as well as yourself, and I assess the credibility of every single witness, I am satisfied that they have met their burden as it relates to aggravated menacing and I'm going to judge you delinquent as it relates to that charge.").

3

June 19, 2017, the court sentenced Belmont to Level V secure care commitment to Youth Rehabilitative Services for an indefinite commitment plus fines. The court then suspended both the sentence and fines.

(5) Belmont appeals a single issue—whether there was sufficient evidence to support the court's adjudication of delinquency of aggravated menacing because the State failed to present adequate evidence that Belmont acted with the intent to cause fear. This Court reviews sufficiency of evidence claims *de novo*, to determine "whether the evidence, viewed in the light most favorable to the State, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt."[8] To establish aggravated menacing, the State must show that the defendant (1) displayed what appeared to be a deadly weapon (2) and intentionally placed another person in fear of imminent physical injury.[9] Belmont claims that the State failed to present sufficient evidence that Belmont intended to place the officers in fear of imminent physical injury.

(6) An appellant must fairly present to the trial court each issue on appeal.[10] If an issue is not fairly presented to the trial court, we review for plain error.[11] To challenge the sufficiency of evidence on appeal, "an appellant is required to have

---

[8] *Carter v. State*, 933 A.2d 774, 777 (Del. 2007).
[9] 11 *Del. C.* § 602(b).
[10] Supr. Ct. R. 8.
[11] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

fairly presented such a claim by a motion for judgment of acquittal to the trial court."[12] The State argues that Belmont only argued in the Family Court that there was insufficient evidence to establish fear by the officers, not Belmont's intent to cause fear. When Belmont moved for judgment of acquittal, he argued that "Tynes did not testify that a weapon was pointed at him. . . . He didn't say that he was in fear of physical imminent injury. He did say he was . . . in fear that his partner was . . . in danger of imminent physical injury."[13] In denying the motion, the court addressed only the sufficiency of the evidence to establish fear, stating that "[Tynes] felt his life was in danger. And I think that's a prima facie case for the charge. So, your motion is denied."[14] Neither Belmont nor the court addressed whether the evidence was sufficient for intent. Because Belmont did not preserve the issue, we review for plain error. "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[15]

(7) A person acts with intent when "it is the person's conscious object to engage in conduct of that nature or cause that result."[16] And "[a] person is presumed

---

[12] *Harris v. State*, 968 A.2d 32, 35 (Del. 2009).
[13] App. to Opening Br. at 191–92 (Tr., at 183–84).
[14] *Id*. at 193 (Tr., at 185).
[15] *Wainwright*, 504 A.2d at 1100.
[16] 11 *Del. C.* § 231(b).

to intend the natural and probable consequences of the person's act."[17]  In a similar case, *Thomas v. State*, a police officer stopped the defendant for a traffic violation and saw the defendant pull out a gun.[18]  The defendant did not point the gun at the officer, but pointed it toward the window the officer was approaching.  The officer "never testified that he was in fear of imminent physical injury," but testified that the defendant's actions led him to believe that the defendant "was going to fire the gun when [the officer] got to the window."[19]  This Court found the evidence was sufficient to establish intent because "Delaware law requires only that the defendant display a weapon and intentionally cause fear of imminent physical injury, *not* that the defendant must point the weapon directly at the victim in a face-to-face confrontation."[20]

(8)    Similarly, regardless of whether Belmont raised the gun or pointed it toward the officers, like the officer in *Thomas*, Tynes testified that he believed Belmont was going to fire the weapon at him or Tabron.  In addition, Tynes testified that he feared his life was in danger.  The parties do not contest that Belmont intentionally pulled out the gun while being chased.  And it is a natural and probable result that a police officer, while pursuing a suspect, would fear being shot when that suspect pulls out a gun.  Because it was Belmont's "conscious object" to pull out the

---

[17] *Id.* § 306(c)(1).
[18] 138 A.3d 1151, 2016 WL 3913460, at *2 (Del. June 1, 2016) (TABLE).
[19] *Id.*
[20] *Id.*

gun, and causing fear is the natural and probable consequence of that act, there was sufficient evidence to establish the element of intent beyond a reasonable doubt. The Superior Court did not plainly err by denying Belmont's motion for judgment of acquittal.

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice