IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NELSON COSBY, | § | |
| | § | No. 361, 2018 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. No. 1711009484 (K) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: February 6, 2019
Decided: February 20, 2019

Before **STRINE**, Chief Justice; **VALIHURA**, and **SEITZ**, Justices.

## **ORDER**

This 20th day of February 2019, having considered the briefs and the record below, it appears to the Court that:

(1) A Superior Court jury convicted Nelson Cosby of robbery second degree, conspiracy second degree, and criminal mischief for robbing Sebastian Battle of two designer belts. On appeal Cosby argues the trial court erred by admitting a text message sent by Cosby before the crime. He also contends for the first time on appeal that there was insufficient evidence to convict him of robbery and related crimes. Finally, Cosby claims for the first time on appeal that the

prosecutor improperly vouched for Battle's credibility. Because the text message was relevant and there was no plain error, we affirm Cosby's convictions.

(2)  On July 29, 2017, Nelson Cosby agreed to buy two Gucci belts from Sebastian Battle for $340. Cosby told Battle he would meet him to make the exchange and was thirty four minutes away and "about" to leave around 9 p.m.[1] Around the same time, Cosby sent a text message to an unknown individual, stating "I'm on my way. We bout to buss [sic] a move."[2] Battle later sent a text message to Cosby saying "we waiting for you."[3]

(3)  Cosby eventually arrived around 11 p.m. and Battle left his home to meet Cosby in his car. Cosby examined the two belts for a long time, which Battle believed was a stall tactic. Then two masked individuals approached the car, held guns against Battle, and demanded his bag, jacket, and the belts. Battle apparently "walked away," leaving the belts which Cosby still had.[4] The masked individuals let him go and got in Cosby's car before driving away.[5]

(4)  The State charged Cosby with the robbery and related crimes. At trial, Cosby objected to the introduction of the "buss a move" text message, claiming it was vague and irrelevant. The court overruled the objection, and focused on the text

---

[1] App. to Opening Br. at A154 (Trial Tr., at A148).
[2] *Id.* at A236 (Trial Tr., at B70).
[3] *Id.* at A156 (Trial Tr., at A150).
[4] *Id.* at A212 (Trial Tr., at B46).
[5] *Id.*

message's use of the word "we" which implied more than one actor in his plans. During the State's closing rebuttal, the prosecutor said "[i]s Sebastian Battle's testimony credible? Absolutely. Is it corroborated? A hundred percent." Cosby did not object to these statements. Cosby also argued that the State had presented insufficient evidence that Cosby acted as an accomplice to robbery or criminal mischief. The Superior Court overruled the objection, finding there was enough circumstantial evidence to merit the accomplice liability instruction. The jury convicted Cosby of all the charged crimes.

(5) On appeal, Cosby argues that the Superior Court erred by admitting the "buss a move" text because the State did not present a clear meaning of the words and thus it could have confused the jury. We review for an abuse of discretion.[6] All parties agree that it was unclear what the text message meant, but the Superior Court admitted the text message because use of the word "we" around the time of the crime implied that Cosby was part of the group who robbed Battle.

(6) The Superior Court correctly held that the text message was relevant because the inclusion of "we" in the message makes Cosby's participation with others in the robbery more probable. Its probative value outweighs the risk of confusing the jury because, while the jury might have been unsure what the phrase "buss a move" means, use of the word "we" and its relevance to the robbery was not

---

[6] *Jones v. State*, 940 A.3d 1, 9 (Del. 2007).

confusing. Thus, the trial judge did not abuse his discretion to admit the text message.

(7) Cosby also argues, for the first time on appeal, that there was insufficient evidence to support his convictions. When a defendant has not filed a motion for acquittal before the trial court, we review a claim of insufficient evidence for plain error.[7] Under plain error review, we will only reverse if the error is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[8]

(8) To evaluate Cosby's claim that the State did not introduce sufficient evidence for a jury to convict Cosby of conspiracy, we review the evidence in the light most favorable to the State to decide whether no jury could find the defendant guilty beyond a reasonable doubt. Conspiracy requires the State show that the accused committed, or planned to commit, the crime, with the defendant aiding, planning, requesting, or agreeing with the crime.[9] A "conspiracy may be logically inferred from the record."[10]

(9) There was sufficient evidence in the record that Cosby agreed, counseled, or aided in the planning and committing of the crime. Cosby sent a text message that he was about to do something with others—the "we" in the text

---

[7] *Harris v. State*, 968 A.2d 32, 35 (Del. 2009); Supr. Ct. R. 8.
[8] *Wainwright v. State*, 504 A.3d 1096, 1100 (Del. 1986).
[9] 11 *Del. C.* § 512.
[10] *Murray v. State*, 880 A.2d 1047, 2005 WL 2219193, at *3 (Del. Aug. 2, 2005) (TABLE).

message. The masked men approached the car, from both directions, at the same time as the sale was taking place. The masked men demanded Battle turn over the belts—an odd request without prior knowledge. Cosby expressed some concern about Battle not being alone, when Battle said "we waiting."[11] Cosby took much longer than estimated to arrive at Battle's house, which supports the idea he was waiting on others or picking them up. Cosby examined the belts for a long time— "stalling" in Battle's opinion. The masked men both held their guns against Battle, neither of them focused on Cosby. And the masked men got into Cosby's car and left. Although Cosby questions the credibility of Battle's testimony, the credibility determination is for the jury. Because the foregoing facts introduced at trial support Cosby's conspiracy conviction beyond a reasonable doubt, Cosby has not established plain error.

(10) Cosby also argues that there was insufficient evidence for the jury to convict him of robbery and criminal mischief under an accomplice liability theory. An accomplice liability instruction is warranted when the State has provided "sufficient evidence from which a jury could reasonably conclude" that the defendant was an accomplice in the crime.[12] The evidence discussed above supports

---

[11] App. to Opening Br. at A156 (Trial Tr., at A150).
[12] *Ayers v. State*, 844 A.2d 304, 308 (Del. 2004).

5

Cosby's convictions for robbery and criminal mischief, through accomplice liability, beyond a reasonable doubt. Thus, Cosby has not established plain error.

(11) Finally, under plain error review, Cosby cannot meet his burden of showing he was prejudiced by the prosecutor's statements.[13] The second half of the prosecutor's statement—"is it corroborated? A hundred percent"—is a comment on the evidence noting that there was corroborating evidence despite Cosby's closing argument. The other half—"is Sebastian Battle's testimony credible? Absolutely"—is more problematic. "Improper vouching occurs when the prosecutor implies some personal superior knowledge, beyond that logically inferred from the evidence at trial, that the witness has testified truthfully."[14]

(12) While Battle's credibility was a major issue in this trial, the prosecutor's brief remark is not enough to show prejudice under plain error review. We have been reluctant to find that a single instance of vouching constitutes plain error.[15] Here, we also believe that the prosecutor did not imply "some personal

---

[13] *Brown v. State*, 897 A.2d 748, 752 (Del. 2006) ("In demonstrating that a forfeited error is prejudicial, the burden of persuasion is on [the defendant]."); *but see Baker v. State*, 906 A.2d 139, 150-51 (Del. 2006) (rejecting the heightened interpretation of plain error "that prosecutorial misconduct or improper comments will only lead to reversal under the plain error standard where credibility is a central issue in a close case and the prosecutorial misconduct is so clear, and defense counsel's failure to object so inexcusable, that a trial judge, in the interest of fundamental fairness, has no reasonable alternative other than to intervene *sua sponte* and declare a mistrial or issue a curative instruction.").

[14] *White v. State*, 816 A.2d 776, 779 (Del. 2003).

[15] *See Abbatiello v. State*, 170 A.3d 779, 2017 WL 3725063, at *3 (Del. Aug. 29, 2017) (TABLE) (finding no prejudice where there was "only one isolated comment that was arguably a logical and proper inference drawn from the evidence."); *Trump v. State*, 753 A.2d 963, 969-70 (Del.

6

superior knowledge" by the statement.  As such, the comments were not "so clearly prejudicial to substantial rights" as to constitute plain error.[16]

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice

---

2000)(ruling that statements by the prosecutor that she believed the victim was telling the truth did not constitute plain error); *see also Rasin v. State*, 187 A.3d 1209, 2018 WL 2355941, at *2 (Del. May 23, 2018) (TABLE) (finding no improper vouching where the State repeatedly made inferences from the evidence that supported the credibility of their witnesses in closing); *Whittle v. State*, 77 A.3d 239, 243 (Del. 2013) (finding improper vouching where the State said a witness was "correct" or "right" at least twenty times).

[16] *Baker*, 906 A.2d at 154.