IN THE SUPREME COURT OF THE STATE OF DELAWARE

SIMON FRENCH,[1]  §
                                          §    No. 272, 2019
    Defendant Below,                      §
    Appellant,                            §    Court Below:  Family Court
                                          §    of the State of Delaware
    v.                                    §
                                          §    Case No.  1902000989 (N)
THE STATE OF DELAWARE,                    §
                                          §
    Plaintiff Below,                      §
    Appellee.                             §

Submitted:  May 20, 2020
Decided:  July 7, 2020

Before **VALIHURA**, **VAUGHN**, and **MONTGOMERY-REEVES**, Justices.

## <u>ORDER</u>

This 7th day of July 2020, upon consideration of the parties' briefs and the record on appeal, it appears that:

(1)    The appellant, Simon French, appeals from a Family Court decision adjudicating him delinquent of Possession of a Firearm by a Person Prohibited (Juvenile) (PFPP (Juv.)).  His one claim on appeal is that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have concluded beyond a reasonable doubt that he possessed a firearm.

---

[1] A pseudonym was assigned to appellant pursuant to Supreme Court Rule 7(d).

(2)     In the early morning on February 2, 2019, officers with the Wilmington Police Department responded to a 911 call in which the caller indicated that her vehicle was stolen by "two (2) unknown black males,"[2] one of whom put a gun to her head.

(3)     Officers tracked the vehicle to West 27th and North Market Streets. A video surveillance camera at Pete's Pizza, located at or near the intersection, shows the vehicle within its view. Two video recordings, an unaltered copy of the Pete's Pizza recording and a zoomed-in version of the same, were admitted at Mr. French's eventual trial.

(4)     The grainy, black-and-white video recordings show that the vehicle suspected of being stolen came to a stop behind a parked vehicle. Officers in police vehicles then pulled up behind the allegedly stolen vehicle. The recordings show the front passenger door of that vehicle being opened and then shut. The door then reopens and a front seat passenger, later identified as French, exits the vehicle. The video also shows the driver, Yahim Harris, dash out of the vehicle. While the driver ran, he made a swinging motion with his left arm at least twice.

(5)     One officer chased after Harris and shot him. The parties stipulated at French's trial that Harris told the officer, "Why did you shoot me? I didn't even

---

[2] App. to Opening Br. at A7.

have the gun anymore, I got rid of the gun."[3]

(6) A second officer approached French. That officer patted French down for weapons several times and neither found weapons on him nor saw any weapons near him. French informed the officer that he did not have a gun. Additional officers assisted in securing French in the back of a patrol vehicle. French told the officers, "[y]ou guys shouldn't have shot my friend."[4]

(7) Another officer searched for surveillance cameras or other evidence in relation to the incident. He observed a firearm underneath the vehicle on the passenger side between the front and rear doors. A member of the Forensic Services Unit with the Wilmington Police Department examined the firearm and determined that it was a Rugar LCP hammerless .38 caliber revolver with a gold cylinder and black frame. No other firearms were found at the scene.

(8) The weather that day was very cold. There was snow, and possibly ice, on the ground. The firearm that was discovered was found resting on top of snow underneath the vehicle, but there was no snow on top of the revolver.

(9) When officers later executed a search warrant at Harris's home, they found ammunition for a .38 caliber gun that was the same type as the ammunition in the revolver found at the scene.

---

[3] *Id.* at A263.
[4] *Id.* at A129.

(10) French was fifteen (15) years old at the time of this incident. He was charged with Carjacking in the First Degree, Possession of a Firearm During the Commission of a Felony, Possession of a Firearm by a Person Prohibited (by a prior adjudication), Possession of a Firearm by a Juvenile, and Conspiracy in the Second Degree. In an amended juvenile petition, the State dropped the charge of Possession of a Firearm by a Person Prohibited (by a prior adjudication). On the day of trial, the alleged carjacking victim failed to appear, and the State entered a *nolle prosequi* on the charges of Carjacking, Conspiracy in the Second Degree, and Possession of a Firearm During the Commission of a Felony. The case proceeded to trial on the remaining charge of Possession of a Firearm by a Juvenile.

(11) Testimony from responding officers, the video recordings, and pictures of the vehicle and the gun found beneath it were admitted into evidence. Although the alleged victim did not testify, a recording of the 911 call she made was played at trial.

(12) At trial, the prosecutrix and one of the responding officers, Officer Thomas Curley, engaged in the following dialogue:

> Q: Did you observe the gun under the passenger side of the car?
>
> A: Yes, I did.
>
> Q: Did you observe the snow on the ground?
>
> A: Yes.

4

Q: Did you observe any snow on the gun?

A: There was no snow on the gun.

Q: Did you have occasion to look . . . at it, look at the scene, or the car, from like the driver's side to the passenger side underneath of the car?

A: I specifically looked to see if the driver could have been the one who tossed the gun under the car. There was a softer snow in between the car tires.

. . .

A: . . . And there were no skid marks or anything about that gun sliding under the car.

Q: So nothing either -- was there anything either on the ground or on the gun itself to indicate that it would have traveled across?

A: It didn't travel across.[5]

(13)    On cross-examination, defense counsel elicited the following from the

same officer:

Q: Okay. And you're saying that there's just no way that Mr. Harris could have discarded the firearm by throwing it under the car because there's no traces, meaning snow traces?

A: There -- from what I observed there's no way --

Q: Okay.

---

[5] *Id.* at A204-05.

A: -- and now look, and my part in this case you know I would . . . like that to be possible. But I'm telling you here it's just . . . it's not possible.

Q: And did you do any tests yourself? Throw it down underneath to see what would happen?

A: No, I'm just telling you that there was soft snow in between those tires and there's no way that gun could have gotten from that side of the car to the other side of the car without going through that snow.[6]

(14) The State's theory of the case was that French placed the weapon under the car and therefore possessed it while doing so. Defense counsel argued that this theory was "very weak," at best.[7] He argued that it was much more likely that Harris, rather than French, got rid of the gun.

(15) The Family Court appeared to agree with defense counsel that it would be more likely that Harris was the one who disposed of the gun underneath the vehicle. But examining the video, the court observed that Harris fled the vehicle quickly without any appearance that he paused before or while doing so,[8] and French was seen opening and shutting the front passenger-side door of the vehicle.[9] The court also considered the weather conditions at the time of the incident, photographs

---

[6] *Id.* at A222-23.

[7] *Id.* at A241-42 ("So although this is a constructive possession case it's a very weak case in the defense opinion.").

[8] *Id.* at A245 ("He just seemed to dart right out of that -- I was sort of surprised how fast he got out of the car and ran down that alley.").

[9] *Id.* ("I did see the passenger's drive [sic] door . . . . The first thing I noticed was the door opened and shut and then opened again when the individual I now know as the defendant got out.").

from the scene, and testimony opining on the likelihood that Harris was the one who tossed the firearm underneath the vehicle. The court reasoned:

> it can very well be that . . . this is Mr. Harris'[s] gun, similar bullets were found in his apartment in [the] search warrant, but looking at -- I feel that the . . . gun was placed there fairly recently, there was no snow on top of it, and what I looked, and nobody really pointed out, I didn't see any -- I looked for marks on these photographs, and I think it was [Officer Curley] that testified he didn't see any of the what I would call horizontal going across the car, any marks and it was soft snow. I do see that . . . soft snow and I don't see any tracks as he testified. I do see a small vertical going to the side, just a very small for a few inches that could have been if the defendant had . . . dropped it with a little bit of a forward motion of his hand as he was trying to get rid of it when that door first opened.[10]

(16)   On that basis, the court adjudicated French delinquent of PFPP (Juv.). The court sentenced him to the mandatory minimum sentence, six months at the Ferris Wharton School for Boys, "with credit for time served providing he successfully complete[d] the Ferris School Program," and ordered that he have no contact with Harris, regularly attend and use his best efforts at school, and obey a curfew set by a probation officer.[11]

(17)   On appeal, French argues that there was insufficient evidence to convict him of PFPP (Juv.). He claims the State failed to prove beyond a reasonable doubt that he possessed the handgun found underneath the vehicle. He notes that Harris

---

[10] *Id.* at A245-46.
[11] Opening Br. Ex. A.

7

can be seen, from the video recordings, making a motion with one of his arms as he fled the vehicle, "in a manner akin to flinging an object."[12] He further argues that Officer Curley's testimony regarding how the revolver could have ended up underneath the vehicle was expert testimony which was not properly admitted. He argues that the prosecutor did not notice or qualify the officer as an expert, and the officer did not testify that his testimony was based on training or experience.

(18) The State responds that the evidence, when viewed in the light most favorable to the State, was sufficient for any rational trier of fact to conclude, beyond a reasonable doubt, that French possessed the firearm. As for Harris's arm-motion, a rational trier of fact could conclude that motion was consistent with the arm movement of a person running, not the driver of a vehicle, mid-flight, disposing of a firearm that officers ultimately found underneath the passenger side of the vehicle. The State also argues that French waived any objection to Officer Curley's testimony by failing to object at the bench trial and, in any event, the officer's testimony falls within the scope of admissible lay witness testimony.

(19) French's attorney did not move for judgment of acquittal. In *Harris v. State*[13] and *Richards v. State*,[14] this Court held that when defense counsel fails to move for judgment of acquittal under Rule 29 of the Family Court Rules of Criminal

---

[12] Opening Br. at 18.
[13] 968 A.2d 32, 35 (Del. 2009).
[14] 865 A.2d 1274, 1280 (Del. 2004).

Procedure, the standard of review is plain error.[15] In *Harris*, we stated that "[a]n error is plain where it is 'so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the judicial process.'"[16] More recently, in *Williamson v. State*, we held that where the Superior Court holds a bench trial in a criminal case, it is not necessary to move for judgment of acquittal in that court in order to preserve a challenge to the sufficiency of the evidence.[17] We reasoned that the defendant's plea of "not guilty" was itself sufficient to preserve the issue for appeal. Accordingly, we reviewed the defendant's conviction in that case to determine "whether *any* rational trier of fact, viewing the evidence in the light most favorable to the State, could find [a] defendant guilty beyond a reasonable doubt."[18] We find it unnecessary to address this apparent inconsistency in the standards of review we have articulated for a bench trial in a Family Court delinquency proceeding and a bench trial in a Superior Court criminal proceeding because in this case we come to the same result applying either standard of review.

(20)   Section 1448(a)(5) of Title 11 of the Delaware Code prohibits juveniles "from purchasing, owning, possessing, or controlling a deadly weapon or

---

[15] Family Court Criminal Rule of Procedure 1(a) provides that the criminal rules apply to delinquency proceedings.

[16] 968 A.2d at 35 (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (en banc) (relying on *Dutton v. State*, 452 A.2d 127, 146 (Del. 1982))).

[17] 113 A.2d 155, 158 (Del. 2015).

[18] *Id.* (alteration in original) (quoting *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995) (quoting *Robertson v. State*, 596 A.2d 1345, 1355 (Del. 1991))).

ammunition for a firearm within the State," including a handgun, unless a limited exception applies.

(21) Actual or constructive possession is sufficient,[19] and possession may be proven through circumstantial evidence.[20] "To prove constructive possession of a gun, the State must show that the defendant: (i) knew the location of the gun; (ii) had the ability to exercise dominion and control over the gun; and (iii) intended to exercise dominion and control over the gun."[21] The State need not offer "evidence that the weapon was physically available and accessible to the defendant at the time of arrest."[22]

(22) We find that there was sufficient evidence presented at trial for the Family Court judge to conclude beyond a reasonable doubt that Mr. French possessed the revolver. At trial, the following facts were established. Officers received a report that a person called 911 because her vehicle had allegedly been stolen by two individuals, one of whom had a firearm. Officers tracked the vehicle to a location where it was stopped and observed that Mr. Harris, the driver, quickly fled the vehicle. Around the same time Mr. Harris ran from the vehicle, the passenger, Mr. French, opened and shut the front passenger side door just prior to

---

[19] *Lecates v. State*, 987 A.2d 413, 421 (Del. 2009).
[20] *Triplett v. State*, 91 A.3d 562, 2014 WL 1888414, at *2 (Del. May 9, 2014) (ORDER).
[21] *Id.*
[22] *Id.*

10

exiting the vehicle. The weather was cold, and there was snow, and possibly some ice, on the ground. Underneath the vehicle, officers found a revolver, the only firearm recovered from the scene, on top of the snow. No snow was on top of the gun. The revolver was found underneath the passenger side of the vehicle, somewhere between the front and back doors on the passenger side. The snow had no indentations or markings in it that would indicate that the revolver had been tossed or slid from the driver side of the vehicle.

(23) From the above, viewing the evidence in the light most favorable to the State, a rational trier of fact could conclude beyond a reasonable doubt that Mr. French possessed the weapon. The State presented sufficient evidence for the Family Court to conclude that Mr. French was the one who placed the revolver underneath the vehicle. To place the handgun there, Mr. French would necessarily have been in actual possession of the weapon, however briefly, before tossing it under the car.

(24) While Mr. Harris did make a motion with his left arm, a rational trier of fact could have concluded that the motion was consistent with Mr. Harris running, not tossing the gun underneath the vehicle. Indeed, the Family Court took note of the speed with which Mr. Harris fled from the car, observing that Mr. Harris did not appear to stop as he ran.

11

(25)	French's claim concerning Officer Curley's testimony is reviewed for plain error.  The officer's testimony consisted of factual observations and common sense inferences drawn from those observations.  There is no plain error in his testimony.

NOW, THEREFORE, IT IS ORDERED that the Superior Court's decision adjudicating Mr. French delinquent of PFPP (Juv.) is AFFIRMED.

BY THE COURT:

/s/  James T. Vaughn, Jr.
Justice