IN THE SUPREME COURT OF THE STATE OF DELAWARE

NATHANIEL MARSH, § 
 § No. 468, 2018
Defendant Below, § 
Appellant, § 
 § Court Below—Superior Court
v. § of the State of Delaware
 § 
STATE OF DELAWARE, § Cr. ID Nos. 1707006525,
 § 1707006527
Plaintiff Below, § 
Appellee. § 

Submitted: March 18, 2019
Decided: May 3, 2019

Before **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices.

# O R D E R

After consideration of the no-merit brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26(c), the State's response, and the Superior Court record, it appears to the Court that:

(1) In September 2017, the appellant, Nathaniel Marsh, was indicted on multiple counts of burglary, conspiracy, theft, and other charges arising from a series of residential break-ins that occurred in June and July 2017. After a three-day trial, a jury found Marsh guilty of one count of Conspiracy Second Degree relating to a burglary at a property on Heritage Court Drive and found him guilty of one count of Conspiracy Second Degree, one count of Burglary Second Degree, one count of Theft, and one count of Criminal Mischief relating to a break-in at a property on

Talbot Drive. The jury found Marsh not guilty of burglary and other charges relating to the Heritage Court break-in and two break-ins at a property on Carvel Avenue. After granting the State's motion to declare Marsh an habitual offender, the Superior Court sentenced Marsh to a total of nine years of Level V incarceration, followed by probation. This is Marsh's direct appeal.

(2) The charges arose from burglaries of three residences.[1] Melissa Biddle testified, as a condition of a plea agreement, that Marsh was her boyfriend and that they committed the burglaries together. The residents of each of the properties also testified, and the State presented a variety of corroborating circumstantial evidence, including photographs and video footage, text messages, and other evidence.

(3) On June 5, 2017, Biddle had been living at an apartment located on Carvel Avenue. The apartment was occupied by Opal Senior, an acquaintance of Biddle's who was out of the apartment for long periods of time because he worked two full-time jobs. Senior had provided Biddle with a key to the apartment. Biddle testified that she and Marsh used the key to enter the apartment and steal Senior's laptop computer and gun ammunition. Two hours later, they returned to the site and Marsh went into the apartment and stole a gun safe, which contained a gun, checkbooks, and other items belonging to Senior. The following day, they returned to the apartment and threw a brick through the window, so that it would not appear

---

[1] Marsh was also indicted on charges arising from a burglary of a fourth residence, but the State dropped those charges after the resident of the property died before trial.

that Biddle was involved. The jury acquitted Marsh of all charges relating to the Carvel Avenue incident.

(4) On June 27, 2017, Marsh and Biddle developed a plan to steal property from another acquaintance of Biddle's, Carroll Carter, who lived in an apartment on Heritage Court Drive. Biddle called Carter and asked him if he would do her a favor by meeting an acquaintance of hers at a nearby McDonald's in order to pick up some clothing. Carter agreed. He waited at McDonald's for more than an hour. During the time he was waiting, he spoke with Biddle to ask when the acquaintance would arrive, and he spoke with a man who said he was on his way. The man never arrived. While Carter was out, Biddle and Marsh cut a window screen, entered Carter's apartment, and stole a television and a video game console. Ashley Parham testified that she was with Biddle and Marsh when Biddle and Marsh went into Carter's apartment building through a window and stole a television and a video game console; she further testified that she heard them making phone calls before they went to Carter's apartment. The jury found Marsh guilty of Conspiracy Second Degree and found him not guilty of Burglary Second Degree and Theft charges relating to the Heritage Court Drive burglary.

(5) A few days later, Marsh and Biddle developed a plan to steal property from Karen Hess and Bill Hallock, who lived in a house on Talbot Drive. Biddle testified that she and Hess were best friends, and Biddle knew that Hess was in a hospital in New Jersey recovering from surgery. On July 1, 2017, Biddle visited

3

Hess and Hallock's home and learned from Hallock that he would be leaving soon to visit Hess in the hospital. Biddle and Marsh watched Hallock leave the house and followed him in their car to make sure that he was driving toward the bridge to New Jersey. Biddle and Marsh then returned to the house, backed into the driveway, jumped over the backyard fence, broke into the house, and stole televisions, video game consoles, a computer tablet, a jar containing loose change, credit cards, and an assortment of collectible coins, including Civil War era coins.

(6)     While Biddle and Marsh were loading the stolen property into the car, a neighbor saw them. When the neighbor attempted to confront them, they drove away. The neighbor testified at trial and provided the police with video footage from surveillance cameras on his property, as well as a photograph that the neighbor took on his cell phone as the car drove away. The video showed Biddle entering the house to speak with Hallock; it showed Hallock leaving the house and driving away; and it showed Biddle and a man loading property into the car and driving away. The evidence at trial also included security video and still photos from a Wal-Mart where Marsh used Hess's credit card to purchase fireworks during the evening after the Talbot Drive burglary, and testimony from the detective who searched the vehicle that Marsh had been driving before he was arrested, in which several of the Civil War era coins that were stolen from the Talbot Drive residence were located. The jury found Marsh guilty of Burglary Second Degree, Conspiracy Second Degree, Theft, and Criminal Mischief in connection with the Talbot Drive burglary.

4

(7) On appeal, Marsh's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Marsh's counsel asserts that, based upon a conscientious review of the record, there are no arguably appealable issues. Counsel informed Marsh of the provisions of Rule 26(c) and provided him with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Marsh of his right to supplement counsel's presentation. Marsh responded with points he wanted to present for the Court's consideration, which counsel included with the Rule 26(c) brief. The State has responded to the Rule 26(c) brief and argues that the Superior Court's judgment should be affirmed.

(8) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must be satisfied that the appellant's counsel has made a conscientious examination of the record and the law for arguable claims.[2] This Court must also conduct its own review of the record and determine "whether the appeal is indeed so frivolous that it may be decided without an adversary presentation."[3]

(9) Marsh's arguments on appeal may be summarized as follows: (i) he should not have been declared an habitual offender because he had no previous convictions for Burglary Second Degree; (ii) the State did not prove the burglary

[2] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S.738, 744 (1967).
[3] *Penson*, 488 U.S. at 81.

5

charge beyond a reasonable doubt; (iii) the prosecutor engaged in misconduct by stating during closing arguments that Marsh was in a vehicle when the police arrested him; and (iv) the sentencing order is internally inconsistent with respect to the payment of restitution. We conclude that all of Marsh's claims are without merit and affirm the Superior Court's judgment.

(10) Marsh's first claim on appeal is that he should not have been declared an habitual offender because he had no previous convictions for Burglary Second Degree. This argument is without merit. The Superior Court sentenced Marsh for the Burglary Second Degree conviction under 11 *Del. C.* § 4214(d) and for the two Conspiracy Second Degree convictions under 11 *Del. C.* § 4214(a).[4] Section 4214 does not provide that a predicate offense for sentencing as an habitual offender must be the same type of offense as the new conviction for which the defendant is being sentenced. The State relied on Marsh's previous convictions for Robbery Second Degree, Reckless Endangering First Degree, and Disregarding a Police Officer's Signal as the basis for declaring Marsh to be an habitual offender.[5] These offenses are predicate offenses under Section 4214(a) and 4214(d).[6]

---

[4] *See Marsh v. State*, No. 468, 2018, Docket Entry No. 35, at A359-60 (Del.).
[5] *State v. Marsh*, Cr. ID No. 1707006527, Docket Entry No. 24 (Del. Super. Ct.); *State v. Marsh*, Cr. ID No. 1707006525, Docket Entry No. 26 (Del. Super. Ct.). *See also Marsh*, No. 468, 2018, Docket Entry No. 35, at A355 (transcript of discussion of the habitual offender motion).
[6] *See* 11 *Del. C.* § 4214(a), (d) (establishing the requirements for sentencing as an habitual offender, including the effect of prior convictions for violent felonies as defined in 11 *Del. C.* § 4201(c)); 11 *Del. C.* § 831 (providing that Robbery Second Degree is a class E felony); 11 *Del. C.* § 604 (providing that Reckless Endangering First Degree is a class E felony); 21 *Del. C.* § 4103(b) (providing that Disregarding a Police Officer's Signal is a class G felony); 11 *Del. C.* § 4201(c)

(11) Marsh's second claim on appeal is that the State failed to prove the burglary charge beyond a reasonable doubt. We review a sufficiency of evidence claim *de novo*,[7] to determine "'whether any rational trier of fact, reviewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt.'"[8] "For the purposes of this inquiry, we do not distinguish between direct and circumstantial evidence," and we "recognize that it is the 'sole province of the fact finder'—in this case the jury—'to determine witness credibility, resolve conflicts in testimony and draw any inferences from the proven facts.'"[9]

(12) The record does not support Marsh's argument that the evidence was insufficient to support his conviction. The defense strategy at trial was to attempt to raise questions about whether Marsh committed the burglaries with Biddle or whether Biddle acted alone or with someone other than Marsh. Indeed, the defense was successful with respect to many of the charges against Marsh, because the jury found him not guilty of any charges relating to the incident at Carvel Avenue and not guilty of burglary and other charges relating to the incident at Heritage Court Drive.

---

(providing that Reckless Endangering First Degree and Robbery Second Degree are "violent felonies").

[7] *Harris v. State*, 2019 WL 459766, at *2 (Del. Feb. 5, 2019).

[8] *Caulk v. State*, 2019 WL 1299962, at *3 (Del. Mar. 19, 2019) (quoting *Robertson v. State*, 596 A.2d 1345, 1355 (Del. 1991)).

[9] *Harris*, 2019 WL 459766, at *2 (quoting *Poon v. State*, 880 A.2d 236, 238 (Del. 2005)).

(13) The jury found Marsh guilty of burglary and other charges relating to the Talbot Avenue break-in. The evidence presented at trial was sufficient to convict Marsh of these charges, including the burglary charge. The evidence identifying Marsh as one of the perpetrators of the Talbot Avenue burglary included Biddle's testimony, the testimony of Hess and Hallock's neighbor, video footage of the perpetrators loading the stolen goods into a car, photographs and video footage of Marsh using a credit card stolen from Talbot Avenue to purchase fireworks at Wal-Mart, Marsh's own testimony regarding his visit to Wal-Mart, and evidence from Marsh's cell phone circumstantially linking him to the crime. Having reviewed the record *de novo*, we conclude that the evidence admitted at trial supports the jury's findings that Marsh was guilty beyond a reasonable doubt of the Talbot Drive burglary.[10]

(14) Marsh's third argument on appeal is that the prosecutor engaged in misconduct by stating during closing arguments that Marsh was in a vehicle when he was apprehended, although in fact Marsh was on foot, and not in or near any vehicles, when the police approached him. We find no error with respect to the prosecutor's statement. Detective Brian Lucas, a member of the New Castle County police department testified that, on the day that Marsh was arrested, he observed

---

[10] *See William Marsh v. State*, 2003 WL 231616, at *2 (Del. Jan. 30, 2003) (summarizing the circumstantial evidence that corroborated a co-defendant's testimony that the defendant joined in burglarizing multiple businesses, and stating that "[e]ven if [the co-defendant's] testimony had been uncorroborated, the jury could still have convicted [the defendant] on that basis alone").

Marsh driving a silver BMW SUV and then conducted surveillance on Marsh for an hour or two. Detective Lucas testified that "eventually the defendant exited the vehicle at which time we attempted to apprehend him. He fled on foot from us and after about a two or 300-yard foot pursuit he was taken into custody."[11] Detective Lucas also provided additional details about the arrest, testifying that Marsh parked the BMW behind a liquor store and was on foot in front of the liquor store when the police pulled up next to him in a minivan. Detective Lucas left the minivan, identified himself as a police officer, and told Marsh to get on the ground. Marsh then fled on foot, running across four lanes of traffic and behind a McDonald's, at which time the officers caught up with him and took him into custody.[12]

(15) During closing arguments, the prosecutor stated that a "search of the BMW which the defendant was found in revealed coins and you heard Bill Hallock tell you about the [Civil War era] coins that were collected as part of the investigation from that BMW and he told you that those are his coins."[13] The prosecutor also referred to "coins found in the vehicle that Nathaniel Marsh was taken into custody from" and the license plate of the "vehicle that the defendant was in."[14] The evidence clearly established that the police officers observed Marsh driving the vehicle in which the coins were later found and that he was arrested after leaving the vehicle.

---

[11] *See Marsh*, No. 468, 2018, Docket Entry No. 35, at A266 (Del.).
[12] *Id.* at A267-68.
[13] *Id.* at A315.
[14] *Id.* at A326.

9

Marsh also admitted at trial that he drove the BMW on the date of his arrest and that he was aware that the coins were in the BMW.[15] The prosecutor's statements during closing arguments were consistent with the evidence. To the extent that the reference to the "vehicle that Nathaniel Marsh was taken into custody from" suggested that Marsh was still in the vehicle at the precise moment of his arrest, we find that the statement did not constitute prosecutorial misconduct.[16]

(16) Finally, Marsh contends that the sentencing order contains an error because in one section it orders him to pay restitution jointly and severally with Biddle and in another section it orders him to pay the full amount of restitution. This claim also is without merit. A defendant may be held jointly and severally liable with a co-defendant for restitution for the value of stolen property.[17] A defendant who is subject to a joint and several liability is responsible for the entire obligation

---

[15] *Id.* at A307-08.

[16] *See Jones v. State*, 2015 WL 6941516, at *2 (Del. Nov. 10, 2015) ("This Court's review of prosecutorial misconduct requires a two-step analysis. First, we determine whether misconduct has occurred. If it has not, our analysis ends. If it has, then we must analyze the misconduct under the framework outlined in *Hughes v. State* to determine whether it unduly prejudiced the defendant and thus amounted to reversible error. In *Hughes*, this Court adopted a three-factor balancing test to determine whether prosecutorial misconduct prejudiced the defendant such that it justifies reversal: '(1) the closeness of the case, (2) the centrality of the issue affected by the error, and (3) the steps taken to mitigate the effects of the error.'" (citations omitted)).

[17] *State v. Rodriguez*, 2017 WL 1192916, at *2 (Del. Super. Ct. Mar. 29, 2017). *See generally Thornton v. State*, 1998 WL 309837 (Del. June 3, 1998) (affirming conviction and sentence that included order to pay joint and several restitution where defendant argued that the Superior Court erred by ordering him to pay restitution because he could not afford to pay).

if the other liable person does not pay.[18] The Superior Court therefore did not err by ordering that Marsh is jointly and severally liable for the full amount of restitution.

(17) The Court has reviewed the record carefully and concluded that Marsh's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that counsel made a conscientious effort to examine the record and the law and properly determined that Marsh could not raise a meritorious claim on appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

---

[18] BLACK'S LAW DICTIONARY 377 (Pocket Ed. 1996). *See also In re Keil's Estate*, 145 A.2d 563, 566 (Del. 1958) ("A joint and several obligation under our law may be enforced by the creditor against both or either [obligor]; but as between obligors each of them, in the ordinary case, is liable for one-half the debt.").

11